UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA OGLESBY, | : | Case No. 1:08-cv-289 |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability, disability income benefits ("DIB"), and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 22-28) (ALJ's decision)).

**I.**

On October 12, 2004, Plaintiff filed an application for a period of disability, DIB, and SSI, alleging a disability onset date of July 17, 2004, due to diabetes mellitus, arthritis, chronic back pain, and depression. (Tr. 255).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

The Social Security Administration denied Plaintiff's claim initially and upon reconsideration. (Tr. 31-32). Plaintiff then timely requested a hearing before an ALJ. (Tr. 40). A hearing was held on March 22, 2007 and again on May 21, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 253). A vocational expert, Mr. George Parsons, was also present and testified. (Tr. 4, 42).

At the time of the hearing Plaintiff was a 54-year old female with a ninth grade education. (Tr. 255). She had past relevant work experience as an assembly and production factory worker, last working on July 17, 2004. (Tr. 255).

On June 11, 2007, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 19-28). That decision became the final determination upon denial of review by the Appeals Council on March 14, 2008. (Tr. 6-8).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 30, 2007.

2. The claimant has not engaged in substantial gainful activity since July 17, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus and low back pain with radicular complaints (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for 8 hours in an 8 hour work day. The claimant should avoid unprotected heights and hazardous machinery. She should avoid ropes, scaffolds, and ladders, but has no other limitations.

6. The claimant is capable of performing past relevant work as a packager and box maker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined under the Social Security Act, from July 17, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 24 - 28).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to a period of disability, DIB, or SSI benefits. (Tr. 28).

On appeal, Plaintiff argues that: (1) the ALJ erred in determining Plaintiff's RFC; and (2) the ALJ erred in finding that Plaintiff's depression was not a severe impairment. Upon careful review, the undersigned finds Plaintiff's assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For her first assignment of error, Plaintiff maintains that the ALJ erred in determining her residual functional capacity ("RFC").[2]

The record reflects that:

Plaintiff was treated by the Hoxworth Clinic at University Hospital as early as January 2004 for diabetes, low back pain, and severe depression. Numerous office notes report symptoms including continued back pain, worse with standing, sitting, walking, and bending, with radiation to her legs and leg weakness.[3] (Tr. 134, 196, 202, 219, 221, 222, 227, 228).

Plaintiff was evaluated by consultative examiner Loraine Glaser in May 2005. Upon examination, Dr. Glaser's diagnoses included low back pain with radicular pain, diabetes mellitus with history of diabetic neuropathy, and hypertension. (Tr. 186).

---

[2] "Residual functional capacity" denotes what an individual can still do despite his or her limitations. 200 C.F.R. §§ 404.1545(a), 416.945(a). According to SSR 96-8p, a RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis. *See* SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; s*ee also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule").

[3] Clinical findings of back pain include: "12/13/05 low back pain - x years, worse recently with pain shooting/stabbing down left leg" (Tr. 203); "2/9/06 leg and back pain – Worse recently Tylenol not helping . . . continues to have weakness in left leg" (Tr. 219); "3/17/06 Back and leg pain continues had MRI of L-spine" (Tr. 221); "4/24/06 back pain – involves whole back & down legs at times, referred to physical therapy" (Tr. 222); "6/30/06 back pain" (Tr. 227); "8/31/06 back pain – whole back, worse with standing, sitting, walking and bending" (Tr. 228); "11/3/06 back pain – mainly low back, but moves up to between shoulder blades at times. Worse with either standing or sitting too long. Pulling sensation & throbbing & with walking = shooting pain. Using Flexeril and OTC Tylenol." (*Id.*)

Dr. Glaser noted an antalgic gait, problems attempting to ambulate heel-to-toe, and a diminished straight leg raise on the right. (Tr. 185-186). Based on the symptoms, Dr. Glaser opined that Plaintiff could perform sedentary work commensurate with her age. (Tr. 186).

Plaintiff underwent an MRI in February 2006, which confirmed a paracentral disc protrusion causing nerve root displacement at the L5-S1, most likely the cause of Plaintiff's radiating pain. (Tr. 204).

Plaintiff underwent an eye exam in October 2006 that confirmed Grade I HTN retinopathy. (Tr. 226).

In an RFC dated March 5, 2007, Dr. Miller, Plaintiff's treating physician, diagnosed Plaintiff with poorly controlled diabetes, hypertension, hyperlipidemia, retinopathy, depression, peripheral neuropathy, chronic ulcers, and leg pain with symptoms including dizziness, increased thirst, and urination, drowsiness with medications, severe back pain worse with sitting or standing too long, throbbing in the low back, radiation to the legs, and shooting pains with walking. (Tr. 230). Dr. Miller limited Plaintiff to sitting and standing no more than 20 minutes at a time and no more than two hours total in an eight hour day for each activity, with the need for unscheduled breaks. (Tr. 232). Plaintiff was further limited to lifting and carrying no more than 10 pounds occasionally with stooping, squatting, and climbing ladders being reduced to rarely. (Tr. 233).

At the hearing before the ALJ, Plaintiff testified that she was unable to work due to pain and side effects from her medications. (Tr. 273). Plaintiff described constant pain, mostly in her legs, and numbness in both feet. (Tr. 274, 284). She testified that she was limited to lifting 20 pounds, and standing and walking 20 minutes at a time. (Tr. 293-294). Plaintiff described side effects from her medications including grogginess, which results in her need to take frequent naps throughout the day.[4] (Tr. 278).

Plaintiff testified that she was currently living with a friend. (Tr. 291). She said that she did as much as she could to help around the house by washing some dishes and cooking a meal. (*Id.*) Someone helped Plaintiff do laundry and drove her to the grocery store, because she could not drive due to the side effects from her medication. (*Id.*)

The ALJ questioned Plaintiff about her insulin injections, to which she testified that she just started the injections because she needed assistance administering them due to her needle phobia.[5] (Tr. 282). Plaintiff also testified to experiencing blurry vision. (Tr. 287). The ALJ asked her if she had ever been diagnosed with retinopathy, to which she replied, "not as far as I know."[6] (Tr. 286).

In his first hypothetical, the ALJ asked the vocational expert ("VE") to consider an

---

[4] An office note from April 24, 2006 clearly supports Plaintiff's claim, stating that "Flexeril . . . makes her groggy." (Tr. 221).

[5] An office note from December 2005 states that Plaintiff is "not psychologically ready" for insulin injections. (Tr. 202).

[6] Plaintiff complained of blurry vision at her clinic visits and underwent an eye exam in October of 2006 that confirmed Grade I HTN retinopathy. (Tr. 197, 201, 226).

individual limited to lifting 50 pounds occasionally and 25 pounds frequently with no limitations with standing, walking, or sitting, to which the VE testified that Plaintiff could perform her past work. (Tr. 303). This was the only hypothetical that elicited a response that would consider Plaintiff not disabled.

The ALJ asked nine additional hypotheticals:

The second hypothetical asked the VE to consider the RFC from Plaintiff's treating physician, Dr. Miller, to which the VE testified that there was no work. (Tr. 304-305).

The third hypothetical asked the VE to consider an individual who was incapable of even low stress jobs, to which the VE testified "that would be hard to quantify." (Tr. 305-306, 309).

The fourth hypothetical asked the VE to consider an individual who is unable to walk a block, to which the VE testified that she would be limited to sedentary work. (Tr. 306).

The fifth hypothetical asked the VE to consider an individual who is limited to sitting 20 minutes at a time, two hours total, and standing/walking 20 minutes at a time, two hours total, to which the VE replied that she would be disabled. (*Id.*)

The sixth hypothetical asked the VE to assume an individual who would have to walk around every 20 minutes for 10 minutes at a time, to which the VE answered that she would be disabled. (Tr. 307).

The seventh hypothetical asked the VE to consider an individual who was required

to shift positions from sitting, standing or walking, to which he testified that she would be limited to sedentary work.[7] (*Id*.)

The eighth hypothetical asked the VE to consider an individual who was required to take unscheduled breaks twice per hour, to which he testified that she would be unable to work. (*Id*.)

The ninth hypothetical asked the VE to consider an individual who was limited to lifting less than 10 pounds, to which the VE testified that she could still perform sedentary work. (Tr. 308).

The tenth hypothetical asked the VE to consider an individual who would miss more than four days per month, to which he testified she would be disabled. (*Id*.)

In his decision, the ALJ found that Plaintiff's diabetes mellitus and low back complaints were severe impairments that did not meet or equal a listing. (Tr. 24). The ALJ found that Plaintiff had the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently and stand and walk for 8 hours in an 8 hour day and sit for 8 hours in an 8 hour day. (Tr. 25). The ALJ found, based upon this RFC, that Plaintiff could perform her past work as a packager and box maker and was therefore not disabled under the Act. (Tr. 27-28). 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Based on her age at the time of the hearing (54) and her prior work at the medium level, the ALJ had to find that Plaintiff could work at the medium level in order to

---

[7] Based on Plaintiff's prior work history, limiting her to sedentary work would indicate a finding of disability.

conclude that she could do her past work.  The only evidence that remotely supports this RFC is the consultative examination performed by Dr. Glaser.  (Tr. 184-187).  However, Dr. Glaser opined that Plaintiff could perform a "moderate" amount of standing and a "moderate" amount of "carrying heavy" objects, not that she could lift and carry up to 50 pounds and stand all day.  In fact, Dr. Glaser indicated that claimant could perform *sedentary* work commensurate with her age.  (Tr. 186).

The record evidence clearly supports limitations in Plaintiff's ability to stand, sit, and lift and carry heavy objects.  (Tr. 232).  Finding that Plaintiff can perform her past work is clearly contrary to all record evidence before this Court.  Accordingly, the undersigned finds that the ALJ failed to provide substantial evidence to support his rejection of the treating and consultative physicians' opinions.  Instead, the ALJ acted as his own medical expert in devising an RFC that is not supported by the record.  *See, e.g., Back v. Barnhart*, 63 Fed. Appx. 254, 259 (7th Cir. 2003) ("[t]ypical cases of ALJs impermissibly 'playing doctor' are when they either reject a doctor's medical conclusion without other evidence, or when they draw medical conclusions themselves about a claimant without relying on medical evidence.").

Accordingly, the ALJ's failure to properly consider the medical evidence renders his RFC not supported by substantial evidence.

**B.**

For her second assignment of error, Plaintiff claims that the ALJ erred in finding that Plaintiff's depression was not a severe impairment.

From a psychological perspective, Plaintiff has been treated by the Hoxworth Clinic for depression with several medications including Prozac, Welbutrin, and Effexor. (Tr. 146, 157, 201- 203, 219, 221, 227).  The record evidences continued symptoms of depression despite this prescribed medication.[8]  In September 2004, Plaintiff was diagnosed with mood disorder after presenting to psychiatric emergency services at University Hospital with suicidal ideation.  (Tr. 144, 146).  In her RFC, Dr. Miller notes that emotional factors including depression and anxiety contributed to Plaintiff's physical condition, and that Plaintiff's pain and other symptoms are severe enough to constantly interfere with her attention and concentration.  (Tr. 231).  Dr. Miller also notes that Plaintiff is incapable of even low stress jobs due to her emotional limitations.  (*Id*.)

Plaintiff underwent a psychological exam with consultative examiner Carla Dreyer in December 2004.  Dr. Dryer's findings were consistent with Dr. Miller's.  (Tr. 144, 146).  Dr. Dreyer diagnosed Plaintiff with an adjustment disorder with depressed and anxious mood and concluded that Plaintiff would have significant problems paying attention and that her depression and anxiety in combination with her physical condition would interfere with her ability to focus.  (Tr. 168).  Dr. Dryer also reported that Plaintiff would have difficulty tolerating stress.  (Tr. 169).

Plaintiff also testified to experiencing depression.  (Tr. 289).  She expressed

---

[8]  *E.g.*, 9/10/04 depressed for one year (Tr. 146); 9/27/07 DX: severe depression (Tr. 157); 11/10/05 Depression- active (Tr. 201); 12/13/05 Depression- anxiety not controlled (Tr. 202); 2/9/06 Depression – not relieved on Prozac (Tr. 203); Depression [increase] Welbutrin (Tr. 219); 4/29/06 Depression Welbutrin XL 450 mg daily still not helping (Tr. 221); 8/31/06 Depression – tried Prozac & Welbutrin, now prescribing Cymbalta (Tr. 227).

difficulty obtaining treatment from a mental health professional due to lack of insurance, but stated that she was on a waiting list to be seen at the mental health clinic. (Tr. 290).

The ALJ discounted Dr. Dryer's opinion, presumably, yet ambiguously, arguing that her finding of extreme symptoms did not correlate with her assigning Plaintiff with a GAF of 65,[9] indicative of a mild impairment. However, the ALJ does not explain this finding, other than to conclude that "the claimant exaggerates some of her deficits." (Tr. 27). Moreover, the ALJ does not address Dr. Miller's psychological findings or explain why he rejects such findings. By law, this is impermissible. Social Security Ruling 96-8p (1996) requires an ALJ to have a narrative discussion as to how he arrived at the RFC.

> "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."

SSR No. 98-8p, 1996 SSR LEXIS 5, at *19, July 2, 1996. The ALJ failed to provide the

---

[9] The GAF (global assessment of functioning) scale reflects a clinician's assessment of an individual's overall level of functioning. *See* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994). A score of 65 is indicative of only mild dysfunction.

requisite narrative discussion with regard to Plaintiff's RFC.

The ALJ cannot make a generic statement that Plaintiff does not have a severe impairment without an analysis of the medical evidence. The ALJ does not even cite Dr. Miller's report and does not discuss the report's findings or his reasons for rejecting the findings in determining that Plaintiff's mental impairments are not severe.

For purposes of establishing disability, Social Security defines a severe impairment as any medically determinable impairment that would interfere with a person's ability to perform the full range of exertional and non-exertional work-related activities. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g). When a claimant alleges a mental impairment, the ALJ has a duty to properly evaluate that impairment and resulting functional limitations. 20 C.F.R. § 404.1520a. In this case, the ALJ committed reversible error in finding there was no substantial evidence of any severe mental impairment.

Accordingly, the ALJ's failure to give a complete narrative discussion as to how he arrived at the RFC, failure to consider all of the medical evidence, and failure to adequately explain why he rejected the opinion of the treating physician constitutes reversible error. Therefore, the ALJ's nondisability finding is not supported by substantial evidence and is not adequately explained.

## III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or

reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Since the claimant has non-exertional impairments, and with those non-exertional impairments the VE testified that there were no jobs Plaintiff could perform, remand is not an appropriate remedy. Moreover, proof of disability <u>is</u> overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's credible assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's physicians, proof of disability is overwhelming.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability, disability insurance benefits, and supplemental security income beginning on July 17, 2004, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

Date:  July 1, 2009                             s/ Timothy S. Black
                                                Timothy S. Black
                                                United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA OGLESBY, | : | Case No. 1:08-cv-289 |
| | : | |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 10 DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 10 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).